Good morning, Your Honors. My name is Jaime Hosso and I represent the petitioner in this matter. The petitioner has raised a number of issues before the Court based on the two decisions from the Board of Immigration Appeals. I'll focus primarily at first regarding the precedent decision, which is the first decision from the Board. In that case, the Board made the determination that the offense in question, violation of California Penal Code 11. The Board made the determination that California Penal Code Section 311.11 is a particularly serious crime, another way to say a PSC, for withholding of removal purposes, making him ineligible for that application for relief. That was the exact holding of the Board's what we used to call a frantisco factors and found that it wasn't simply the fact that possession of child pornography was an aggravated felony, but that the downloading by your client, quote, numerous times, unquote, qualified it as a particularly serious crime. That is exactly the key of the Board's decision. Is that error? Absolutely, Judge. Why is it error? For one reason, the finding from the Board is not supported by the record. The immigration judge never actually made that finding. When you take a look at the immigration... Can't the BIA make that finding de novo? No, they would have to make it under the clearly erroneous standard of determination of whether or not finding a fact was incorrect. Well, no, no, no. There's no... They didn't find that there was... There were numerous downloadings. They took the view that the numerous downloadings made it a particularly serious crime, which is a legal conclusion, is it not? Yes, but the finding of whether or not he downloaded it was never a finding made by the immigration judge. Oh, you're saying that the finding that was numerous on downloading was a factual predicate to the finding, and that was done de novo, which it shouldn't be done. It should be done under abuse of discretion standard. A clearly erroneous standard, right, Judge? In the court, the Board could not have imputed such a finding because the IJ was very clear in its findings. The IJ made a very clear finding that based on all the evidence that it considered, which included outside sources of the conviction record, that the petition in the case had, in fact, possessed inappropriate material, pornographic material, on the computer databases. Now, let's assume that it... Okay, so I'm sort of struggling with this. So I see the... I find the BIA's findings that he had downloaded numerous images. So where does that contradict what the IJ found? Because the IJ never made that finding. The IJ makes a specific finding in his immigration, in his order, which makes simply the finding that based on the record before him, he made a specific finding that the petition in the case actually possessed the pornographic material on his computer database. Nothing in reference to multiple downloadings or anything of that nature. Now, we'll accept, let's accept for a moment that it is true that he downloaded the information. Excuse me. The IJ did find that he had downloaded 29 videos. The immigration judge was referencing the materials from the ISP provider, the Internet Service Provider, which indicated that there was, in fact, downloaded material from that computer database. And he admitted knowledge that they were there. I'm sorry. And your client admitted knowledge that they were there. They were on his computer, yes. But there was never a finding by the immigration judge that there was, in fact, a downloading. But let's assume there was a downloading. Well, 29 videos were found to have been downloaded. Yes, from the ISP provider. But the judge never made a finding based on that petition. The case actually made the downloading of the videos. It was his computer. Yes. And he admitted to knowledge of the personal of personal possession of the pornographic materials, but not as to the downloading. You don't think that there's sufficient circumstantial evidence if he admits ownership of the computer, admits to knowledge of what's on there, that he did the downloading? Is there some penal code intervening felon here who we don't know about, who downloaded it? You know, I believe the petitioner actually tried to shift blame. Yeah, it wasn't believed. But it wasn't believed. That's correct. But, however, let's assume that downloading the information was, in fact, true. The downloading of the information is encompassed within the penal code section itself. The penal code section contemplates digital images, computer database information. It is part of the actual offense in question. So when we review the facts and circumstances of this case in relation to the commission of the offense, it is one and but the same. It is the commission of the offense of the actual violation of the penal code. There is no extraordinary or aggravating factors which would be outside of the commission of the offense in question. You looked a little puzzled. Yes, I'm puzzled because you're saying that consideration of 29 downloads by the BIA, which they term as numerous, they didn't say 29, doesn't make any difference between a plain old child pornography possession and a particularly serious child possession? Well, the board makes the reference of simply downloading the images. Downloading the images increased or elevated the fact of conviction to a PSC. The criminal statute contemplates the fact by its own language that there would be the downloading of information, data. I didn't deny, he didn't deny downloading. He said he pushed the button and then he went to his computer, at least one of his computers, but he didn't have access to both computers, each of which had child pornography downloaded. His testimony before the IJ, as I read the record, wasn't that he didn't download them. It said he didn't know they contained pornographic pictures. The board's decision is solely based on whether or not the downloading of the information elevates the claim. I know, counsel, but the BIA can look at the record and the testimony of your client and make a conclusion from that, and on the face of it, the IJ is recounting as fact that he did download 29 videos and that he had an explanation for it, but he didn't deny downloading them. If we accept it as true that he downloaded the information, it still doesn't go beyond what is already contemplated in the criminal statute. The criminal statute contemplates that there would be downloading. How many does he have to download in order to violate the statute? According to the statute, one. One. And if he's violated 29, can't the BIA determine that that makes it a particularly serious crime? I think what you're trying to get at, counsel, is you're afraid that the BIA's decision makes this a per se violation, and the BIA denied that that's what it was doing, that it was not per se, it was doing case by case. But if the BIA can point to facts, including the fact that your client downloaded 29 videos as opposed to one, and says on that basis we're going to find this to be a particularly serious crime, what's wrong with that? Because it doesn't also consider the other factors, as the judge had mentioned. The Francesco factors considers not only the nature of the offense and the underlying circumstances, but also the length of the sentence. The board made it very clear that it was trying not to make a per se rule. Well, the board has only, in two different circumstances, not accepted or considered length of sentences. Length of sentences were not considered in cases where the board made a per se rule. There was two decisions, in fact matter of NAM, and Garcia-Garacho was both decisions in which they per se made a rule, and they said we're going to ignore the length of sentence. The board's decision also cites to the Fourth Circuit's decision in matter of, sorry, Garacho versus Holder. In that case, also, there was evidence that the board did consider the length of the sentence here. The board considered it to the extent that it said we're not going to consider it irrelevant. They considered it to the extent that the fact that it wasn't all that long wasn't dispositive for the board, but they certainly acknowledged it, and they certainly went through the factor. They did not go through the factor. In both, in the board's decisions of precedent authority, they go through their analysis and make the determination of, yes, we're not going to consider the length of the sentence when we're going to make it per se, PSC. They also make the same determination of we're not going to consider the length of the sentence when there has been extraordinary facts in the case outside of the commission of defense, such as when the defendant assists law enforcement in the prosecution of other people. That's what happened in Galvey-Holder. The board cites to Galvey-Holder, and that's exactly what happened. The Attorney General's decision in NYL, AG, and RSR, same thing. They assisted law enforcement, and in those cases, they considered the fact that, okay, he committed, he assisted law enforcement, so we're not going to consider the length of the sentence because it doesn't reflect the severity of the crime. The board went out of its way to really say that this was not a per se rule. So in such a situation, they should have considered the length of the sentence. Well, they did. They have a whole paragraph. Saying that they're not going to consider it. No, that's not what they said. We recognize that 280 days in prison, three years of probation is much less than the respondent could have received. However, as the immigration judge also stated, 280 days was not a light sentence. We have also explained the severity of crime is not always reflected in the length of the sentence. The nature of the respondent's crime is so condemnable that the length of the sentence is less significant to the analysis. What's wrong with that? Because the actual consideration of the sentence is, for lack of a better word, is providing lip service. There is no analysis as to the length of the sentence truly being considered as a factor in the PSC analysis. Sorry, I'm out of time. Yeah. We've taken quite a bit of your time. I'm going to allow you a minute for a rebuttal. Thank you, Judge. Let's hear from the government. May it please the Court, Your Honor, Laura Merrildy for the respondent. The Court's determination that Mr. Meza-Barjona's conviction was for particularly serious crime is reviewed only for abuse of discretion and should be upheld. The petitioner has not shown that the Board acted arbitrarily, capriciously, or contrary to law in making that decision. It considered the nature of the offense, the sentence imposed, as Your Honor just pointed out, and the underlying facts and circumstances. And its decision was perfectly consistent with the immigration judge's findings of the fact. As I think was just discussed, the Board did not depend on a particular number of downloadings. And the record certainly supports that there were numerous and repeated downloadings of the videos in question. I just wanted to also address one point about the Board's, a point that the petitioner raised in his brief about, also about fact-finding and where the immigration judge found that the children depicted in the images had already been victimized. And he was discussing the weighing of the various factors. And the Board went on to point out in its decision, consistent with its own precedent, precedent from this circuit, and precedent from the Supreme Court, that there is an ongoing victimization of children depicted in these pornographic materials. And it was, it was a perfectly proper. But that's true of all child pornography. That's not a factor that makes it a particularly serious crime, is it? No, it's a factor that goes to the nature of the offense, Your Honor. The nature of the offense. The nature of the offense, which under NAM and Prentescu is one of the main considerations to find a particularly serious crime. But if that, if that's true, that would be true of any child pornography case, in which case the BIA evidently has adopted a per se rule, even though it said it wasn't. No, I don't think it did, Your Honor. I think what it was doing was, it was, its decision was, it was focused on the facts and circumstances of this case. As well as on the nature of the offense. And it did, as Your Honor pointed out, look at the sentence imposed. I think it was very clear that it was not a per se, announcing a per se, that it was not a per se particularly serious crime. Not only because it didn't, the sentence was not the five years set forth in the statute, which automatically makes something a per se particularly serious crime. But conceivably the board is leaving open some, some circumstance in which it reviews a conviction under the statute where the facts, the underlying facts and circumstances perhaps are not so egregious. So I think the court's decision and decision making were entirely consistent with... But the board's come pretty close to saying it's going to be a per se rule, hasn't it? I think it came close because of the nature of the offense, Your Honor, yes. It came close. But it's very clear from the record and from the IJ's decision and from the board's decision itself that it did, it was looking at, at, at this as a case, on a case by case basis. Do you know of any, of any child pornography cases where the board has said it, it was not a particularly serious crime? I do not, I have not, Your Honor, but I, I have not focused on that in my research. Anything further, counsel? Not, not on, on the particularly serious crime, Your Honor. I wanted to address some points on the, the denial of, of cat protection. I wanted to point out a case that was decided a few months after the briefs were submitted in this case and it is, if I'm pronouncing it correctly, Kono of 750-Fed-30-11-20. And it... Is that a case that you called to our attention by a 28-J letter? No, Your Honor, I did not. I thought the department was fully aware of 28-J. Yes, we are. I think that's, I think if, if, I think it was really my error, Your Honor, I, I had it in my, well, if I could proceed. You can, but it's useful for us to get it in advance because now you have to give us the site and we don't know the facts. Does counsel, your opponent, have a copy of the case? I, I do not know. Well, of course you don't because you didn't advise them you were going to pull it out. So he didn't even address cat on his opening, did he? Not on his opening, no. Okay. I, I'm addressing the argument he made in his brief, Your Honor, that the, which stressed that the persecution and torture are not, which are, are analytically separate, as we, as we did point out in our brief. And I think that case underscores that point and that they are not interchangeable. The court's indulgence for a moment. The fact that, well, I think one, one point that's important to make is that the, the, the immigration judge's comment that in his first decision, his March 8, 2011 decision, that he found that Mr. Mesa Barjona's life or freedom would be better in the future if he were returned to Honduras in, in the context of a withholding of removal analysis was never upheld by the board. So for that, that is one of the reasons that that does not meet his burden of proof to, under the Convention Against Torture. And secondly, and perhaps more importantly, is that the standards are different. And the court has stressed that in, in I think numerous cases, but in, in the one I just cited, as well as in CalMathS, which is in our brief. The, Mr. Mesa Barjona relied on experiences he had in Honduras as a child, some 18 years or so before his hearing, and on these country reports to try to show, to meet a high standard, which is to show that if he, it was more likely than not, that if he returned, if he were removed to Honduras, he would be tortured at the instigation of the government or with the acquiescence of the government and with the government official. And he simply didn't meet his burden of proof. The, the board properly reviewed the burden of proof issue and the immigration judge's findings and everything that it pointed to was in the record and was, in fact, the, both the State Department reports were in the record. I don't know what the, what the administrative notice, why, why the board referred to administrative notice in its decision, but both of those reports were already in the record. In fact, petitioner's counsel, petitioner here, referred to them in her closing argument. I think that's at page 305 of the record. So I did want to clarify that point. And the date of that report, I think it appears at page 612 of the record, is May 24th, 2012. That's less than four months, excuse me, less than five months before the hearing. So it was not, there was no surprise there. And, in fact, both DHS and the petitioner had submitted that report in the record. And when there is some, there is somewhat conflicting or contradictory information in State Department reports, this course has held that it should defer to the BIA's construction of them. And the BIA's conclusion was, was properly concluded that he had not met his burden to show that he would be tortured if he was returned to Honduras. If the court, if the court does not have any questions. I don't think so. Thank you, Ms. Merrill. Thank you. Mr. Hassell, I'm going to give you a minute. The additional time. Just briefly, in reference to her first, in reference to her first statement, thank you for the additional time. In reference to her first statement, this is not an abuse of discretion standard. This is a de novo review. The court's reviewing the interpretation of the board's interpretation of a criminal state statute. The board has no additional legal expertise in the interpretation of a criminal statute than any other court. Regarding the denial of CAT, I certainly understand the difference between the more likelihood standard for the demonstration of torture versus persecution. However, the starting point for the immigration judge should have been the fact that the petitioner in the case had established eligibility for withholding removal. It was simply not granted because of the PSC issue. So when the analysis begins from the starting point on the second remanded decision, it should begin from the fact that he's already demonstrated a more likelihood of persecution based on the factors that he had already decided. He had already decided. Time is up. Thank you, judges. And if there's any additional questions, I can answer. I don't think so. Thank you, counsel. Thank you. Ms. Barjona is ordered to submit it.
judges: Fisher, Bybee, Bea